IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL ROBINSON and WENDY ROBINSON, : <br>      Plaintiffs, : <br> : <br> v. : <br> :   CIVIL ACTION <br> HARTZELL PROPELLER INC., and :   NO. 01-5240 <br> NEW ENGLAND PROPELLER : <br> SERVICE, INC. : <br>      Defendants. : | |

DuBOIS, J.                                                                                                    JULY 3, 2007

**M E M O R A N D U M**

I.  **INTRODUCTION**

  On August 15, 1999, plaintiffs Michael and Wendy Robinson were forced to make an emergency crash landing in their Mooney M20E aircraft near Prattsburg, New York. Plaintiffs allege that, as a result of the crash, Wendy Robinson fractured her spine, breast bone, and left foot; Michael Robinson's injuries resulted in permanent paraplegia.

  Plaintiffs aver in the Complaint that a blade of the aluminum propeller on their aircraft fractured during the flight, causing the crash. Defendant Hartzell Propeller Inc. ("Hartzell") designed and manufactured the propeller, model number HC-C2YK-17666-2. Defendant New England Propeller Service, Inc. ("New England") is alleged to have performed maintenance on the propeller. Plaintiffs' plane was powered by a IO-360-A1A engine manufactured by Lycoming. In their Complaint, plaintiffs assert that "[t]his particular aircraft and engine combination was known to create a harmonic between the [propeller] blade and the engine, which could and did result in the development of stress corrosion cracks within the blade."

Compl. ¶ 31.

The Complaint asserts claims against Hartzell for negligence (Count I), strict liability (Count II), and fraud and misrepresentation (Count III). Plaintiffs assert one claim against New England for negligence (Count IV).

Presently before the Court is Hartzell's renewed Motion for Summary Judgment Pursuant to the General Aviation Revitalization Act of 1994 ("GARA"), Pub. L. No. 103-298, 108 Stat. 1552 (reprinted in 49 U.S.C. § 40101 note). In the renewed Motion for Summary Judgment, Hartzell argues that plaintiffs' claims are barred by the eighteen year statue of repose contained in GARA. Plaintiffs respond that the GARA statute of repose does not bar their claims because the "knowing misrepresentation, concealment or withholding" exception to the statute of repose applies. For the reasons set forth below, Hartzell's renewed Motion for Summary Judgment is denied.[1]

## II.   BACKGROUND

A detailed factual and procedural history is included in this Court's previously reported, sixty-six page opinion denying Hartzell's first motion for summary judgment, <u>Robinson v. Hartzell Propeller, Inc.</u>, 326 F. Supp. 2d 631 (E.D. Pa. 2004), and in the opinion of the Court of Appeals for the Third Circuit dismissing Hartzell's interlocutory appeal of the Court's opinion, <u>Robinson v. Hartzell Propeller, Inc.</u>, 454 F.3d 163 (3d Cir. 2006). Accordingly, in this Memorandum, the Court sets forth only the factual and procedural history necessary to explain its ruling.

---

[1] Also before the Court is plaintiffs' Motion to Strike Hearsay Exhibit from Summary Judgment Record. Because the Court denies Hartzell's renewed Motion for Summary Judgment without reference to the exhibit at issue, plaintiff's Motion to Strike is denied as moot.

**A.    The General Aviation Revitalization Act**

"The General Aviation Revitalization Act ('GARA') contains a statute of repose that generally bars suits against airplane manufacturers more than eighteen years after the delivery date to an initial purchaser of the aircraft." Robinson, 454 F.3d at 165 (citing Pub. L. No. 103-298, 108 Stat. 1552 (reprinted in 49 U.S.C. § 40101 note)).[2] The statute of repose "supersedes any State law to the extent that such law permits a civil action . . . to be brought after the applicable limitation period for such civil action established by" GARA. 49 U.S.C. § 40101 note § 2(d).

There are a number of exceptions to the GARA statute of repose. The exception at issue in this case is set forth in Section 2(b)(1) of the Act. Under that Section, the GARA statute of

---

[2] GARA provides, in relevant part, as follows:

[N]o civil action for damages for death or injury to persons or damage to property arising out of an accident involving a general aviation aircraft may be brought against the manufacturer of the aircraft or the manufacturer of any new component, system, subassembly, or other part of the aircraft, in its capacity as a manufacturer if the accident occurred-

(1) after the applicable limitation period [eighteen years] beginning on-

(A) the date of delivery of the aircraft to its first purchaser or lessee, if delivered directly from the manufacturer; or
(B) the date of first delivery of the aircraft to a person engaged in the business of selling or leasing such aircraft; or

(2) with respect to any new component, system, subassembly, or other part which replaced another component, system, subassembly, or other part originally in, or which was added to, the aircraft, and which is alleged to have caused such death, injury, or damage, after the applicable limitation period beginning on the date of completion of the replacement or addition.

49 U.S.C. § 40101 note §§ 2(a), 3(3).

repose does not apply

> if the claimant pleads with specificity the facts necessary to prove, and proves, that the manufacturer with respect to a type certificate or airworthiness certificate for, or obligations with respect to continuing airworthiness of, an aircraft or a component, system, subassembly, or other part of an aircraft **knowingly misrepresented to the Federal Aviation Administration, or concealed or withheld from the Federal Aviation Administration, required information that is material and relevant** to the performance or the maintenance or operation of such aircraft, or the component, system, subassembly, or other part, that is **causally related** to the harm which the claimant allegedly suffered.

Id. § 2(b)(1) (emphasis added).

"To take advantage of . . . GARA's "knowing misrepresentation or concealment or withholding" exception, plaintiffs must prove: (1) knowing misrepresentation, or concealment, or withholding; (2) of required information that is material and relevant; (3) that is causally related to the harm they suffered." Robinson, 326 F. Supp. 2d at 646-47; see also Schwartz v. Hawkins & Powers Aviation, Inc., 2005 WL 3776351, *5 (D. Wyo. Apr. 8, 2005).[3]

**B.     Hartzell's First Motion for Summary Judgment**

On February 6, 2003, Hartzell filed a motion for summary judgment, in which it asserted that plaintiffs' claims were barred by the GARA statute of repose because the propeller at issue was installed on plaintiffs' aircraft more than eighteen years before the accident. In response, plaintiffs argued, *inter alia*, that the "knowing misrepresentation, concealment or withholding" exception applied because Hartzell made several misrepresentations to the Federal Aviation

---

[3] Hartzell argues that the exception also requires plaintiffs to establish "justifiable reliance" by the Federal Aviation Administration and that "the resulting injury was proximately caused by the reliance." See Mot. Summary J. at 9 (citing GMH Assoc., Inc. v. Prudential Realty Group, 752 A.2d 889 (Pa. Super. 2000)). The Court rejects this argument. The case upon which Hartzell relies, GMH Associates, sets forth the elements of common law intentional misrepresentation, and is distinguishable on that ground.

Administration ("FAA"), both in its application for a type certificate for the propeller and in reporting the cause of propeller failures occurring after certification.

By Memorandum and Order dated July 21, 2004, the Court denied Hartzell's first motion for summary judgment. The Court held, *inter alia*, that there were genuine issues of material fact as to three alleged instances of "knowing misrepresentation, concealment or withholding" by Hartzell.

Two of the instances of "knowing misrepresentation" identified in the July 21, 2004 opinion involved Engineering Report 213 ("ER 213"), which Hartzell submitted to the FAA in its application for a type certificate for the accident propeller. "Federal law requires propeller manufacturers to obtain a type certificate from the FAA. The purpose of that process is to ensure that the propeller has been designed and manufactured properly, performs properly, and meets FAA minimum standards." Robinson, 454 F.3d at 169 (citing 49 U.S.C. § 44704); see also United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 804 (1984).

ER 213 recorded the results of a vibration test Hartzell conducted of the accident propeller, engine, and aircraft combination during the week of July 8, 1963. Robinson, 454 F.3d at 166. The report contained graphs and a narrative section. In the narrative section of ER 213, Hartzell stated:

> The peak stress at 2230 r.p.m. reached a value of 4800 p.s.i. for the 24 inch manifold setting, which is **approximately the allowable value**. Since this engine has no **dampers** which can wear and cause higher stresses, the probability of this value being reached or exceeded in service seems remote. There appears to be no necessity to **placard** against operation in the 2200-2300 r.p.m. range.

Def.'s Mot. Summary J., Ex. B at 2; Pls.' Resp., Ex. J at 2 (emphasis added). In contrast, the

graphs contained in ER 213 "demonstrate[d] that allowable vibratory stress limits were exceeded at three different points."  Robinson, 454 F.3d at 166; see also Robinson, 326 F. Supp. 2d at 649.

In the July 21, 2004 opinion, the Court held that ER 213 raised two genuine issue of material fact as to Hartzell's "knowing misrepresentations" to the FAA.  First, the Court held that there was a genuine issue of material fact as to whether Hartzell misrepresented that the peak stresses were "approximately the allowable value," when Hartzell knew that the stresses actually exceeded the allowable level.  Second, the Court held that there was a genuine issue of material fact as to whether Hartzell misrepresented that placards were unnecessary, when Hartzell knew the aircraft needed placards to limit operation at certain propeller speeds.  Robinson, 326 F. Supp. 2d at 650, 651.  The Court further found that the question whether these statements were made "knowingly," were "required information," and were "causally related" to the accident presented genuine issues of material fact.  Id. at 651-52, 654.

In addition, in the July 21, 2004 opinion, the Court found a third genuine issue of material fact as to whether Hartzell "knowingly misrepresented, concealed or withheld" the actual cause of propeller failures after certification.  Specifically, the Court held that there was a genuine issue of material fact as to whether "Hartzell was aware of the high vibratory stresses that resulted from the propeller/engine combination but blamed propeller failures on other factors to conceal this problem."  Id. at 655.  The Court further found genuine issues of material fact as to whether Hartzell's concealing or withholding the actual cause of propeller failures involved "required information" and was "causally related" to plaintiffs' accident.  Id. at 659-60.  This ruling was based on expert testimony, letters sent by Hartzell to the FAA, and service difficulty reports ("SDRs"), which described propeller failures involving the same type of propeller and engine as

those on plaintiffs' aircraft.

Finally, in the July 21, 2004 opinion the Court rejected plaintiffs' allegation of a fourth instance of knowing misrepresentation: Hartzell's statement in ER 213 that dampers "can wear and cause higher stresses." See Def.'s Mot. Summary J., Ex. B at 2; Pls.' Resp. Ex., J at 2. The Court determined that that there was "no evidence that Hartzell's statement about dampers was a misrepresentation." Id. at 650. However, by separate Order dated July 21, 2004, the Court granted plaintiffs' Motion to Compel discovery of Engineering Report 159 ("ER 159"), dated May 17, 1957, which according to plaintiffs, provided evidence that Hartzell's statement in ER 213 about dampers was a knowing misrepresentation. The ruling in the July 21, 2004 opinion on Hartzell's statement about dampers was "without prejudice to plaintiffs' right to offer evidence at trial that Hartzell's statement about dampers was a misrepresentation." Robinson, 326 F. Supp. 2d at 650 n.8.

Hartzell filed a timely appeal of this Court's July 21, 2004 Memorandum and Order. On July 6, 2006, the Third Circuit held that, as a matter of first impression, an order denying summary judgment on a statute of repose defense was not a "collateral order" under Cohen v. Beneficial Loan Corp., 337 U.S. 541 (1949), and its progeny. Accordingly, Hartzell's appeal was dismissed for lack of appellate jurisdiction.

C.     **Hartzell's Renewed Motion for Summary Judgment**

On March 2, 2007, Hartzell filed a renewed Motion for Summary Judgment under the GARA statute of repose. In the renewed Motion for Summary Judgment, Hartzell presents additional evidence obtained in subsequent discovery and argues that it resolves all of the genuine issues of material fact identified in the July 21, 2004 Memorandum. Specifically,

7

Hartzell avers that the additional evidence establishes that (1) Hartzell's statement in ER 213 regarding vibratory stresses was not a "knowing misrepresentation"; (2) Hartzell's statement in ER 213 regarding the need for placards was not a "knowing misrepresentation"; and (3) Hartzell did not conceal information from the FAA regarding the actual cause of propeller failures after certification.[4]

In their Response, plaintiffs argue that the additional discovery presented by Hartzell does not resolve any of the genuine issues of material fact identified in the July 21, 2004 opinion. Moreover, plaintiffs contend that there is now additional evidence that Hartzell made a knowing misrepresentation regarding dampers in ER 213.[5]

Hartzell's renewed Motion for Summary Judgment and plaintiffs' Response present, *inter alia*, the following evidence, which was not presented in the first motion for summary judgment:

1. **Additional Evidence Regarding Vibratory Stresses: The September 11, 1964 Letter from the FAA**

In the renewed Motion for Summary Judgment, Hartzell relies primarily on a letter dated September 11, 1964 from the FAA to Hartzell. See Def.'s Mot. Summary J., Ex. D; Pls.' Resp., Ex. N. The September 11, 1964 letter concerned "an in-flight blade failure . . . on a Mooney

---

[4] In addition, Hartzell argues that the additional evidence demonstrates that the FAA was not deceived by the narrative portion of ER 213 and that the FAA was not deceived by Hartzell's reports of propeller failures. See Def.'s Mot. Summary J. at 13, 17, 29-30. However, as stated in note 3, supra, reliance is not an element of the "knowing misrepresentation, concealment or withholding" exception to the GARA statute of repose. Thus, whether or not the FAA was deceived is not a material issue, and the Court rejects these arguments.

[5] Plaintiffs further argue that additional evidence demonstrates that Hartzell knowingly used inadequate testing methods to measure the vibratory stresses on the propeller in ER 213. Pls.' Resp. at 1, 22. Because the Court denies Hartzell's renewed Motion for Summary Judgment on other grounds, the Court does not reach this issue.

Model 20E aircraft equipped with a Hartzell Model HC-C2YK-1/7666-2 propeller," which occurred on August 20, 1964. See Pls.' Resp., Ex. M. The FAA first brought this crash to Hartzell's attention by letter dated August 27, 1964. Id.

In the September 11, 1964 letter, the FAA discussed the August 20, 1964 crash in light of ER 213, as follows:

> Our letter of August 27, 1964 advised of an in-flight failure of your HC-C2YK/7666 propeller on a Mooney M20E airplane on August 20, 1964. The blade failed six inches from the tip and as far as is known there were no nicks on the propeller blade in the area of the failure.
>
> Hartzell Engineering Report No. 213 covering the strain survey for the propeller/engine combination on the M20E aircraft shows that tip stresses are quite high in the 2150 to 2300 RPM range. **The allowable stress limit is actually exceeded at 2230 RPM**.
>
> In view of the low time on the aircraft (37.8 hours), it is unlikely that factors such as engine condition or service damage could have contributed to the failure. It is more likely that excessive vibratory stressing resulting from prolonged operation within the above RPM range caused the failure. **We believe that a placard against continued operation within the 2150 to 2300 RPM range would aid in preventing these failures.**

Def.'s Mot. Summary J., Ex. D; Pls.' Resp., Ex. N. (emphasis added).

### 2. Additional Evidence Regarding Placards

After the mailing of the September 11, 1964 letter, the FAA and Hartzell exchanged additional correspondence, and held one meeting, regarding vibratory stresses and the need for placards. In their submissions, the parties present additional evidence of these events as follows.

By letter dated October 6, 1964, Hartzell responded to the FAA's September 11, 1964 letter. Hartzell stated:

> While we feel that the prime cause of the [August 20, 1964] failure is the severe nick, we believe that a restriction against continuous operation in the 2150 to 2300 RPM range might improve the chances of avoiding such failures in the future. We will

9

recommend to Mooney Aircraft, that such a restriction be imposed.
Def. Mot. Summary J., Ex. E; Pls.' Resp., Ex. O.

On March 5, 1965, Hartzell, the FAA, and Lycoming, met to discuss, *inter alia*, "the problem of high propeller stresses" on the Mooney M21. Def.'s Mot. Summary J., Ex. G at 1; Pls.' Resp., Ex. P at 1. As to the problem of vibratory stresses, the parties agreed that "[t]he program for this problem consisted [sic] of tests with other propeller shapes to detune the resonance. If existing propellers could be modified to reduce the stresses enough, then this procedure will be followed. If not, a placard avoiding operation between 2100 and 2300 RPM should be put into effect." Def.'s Mot. Summary J., Ex. G at 4; Pls.' Resp. Ex., P at 4.

Thereafter, the FAA twice imposed rpm restrictions on the propeller/engine combination at issue. Robinson, 454 F.3d at 167. On May 28, 1965, the FAA adopted an Airworthiness Directive, "AD 65-12-13 which changed the red arc on the tachometer to limit operation between 2100 and 2350 r.p.m." Robinson, 326 F. Supp. 2d at 639.[6] "In 1977, AD 77-12-06 required the installation of a placard near the tachometer to inform pilots that 'continuous operation' should be avoided between 2000 and 2350 r.p.m. or above 2600 r.p.m. in 'full throttle level flight.'" Id. (citations omitted).

### 3. Additional Evidence Regarding Propeller Failures After Certification

Following certification of the accident propeller, the FAA received a number of SDRs [service difficulty reports] that described propeller failures involving the same propeller and

---

[6] "An AD [Airworthiness Directive] is a legally enforceable rule that applies to, *inter alia*, aircraft and propellers. See 14 C.F.R. § 39.3. The FAA issues an AD if two requirements are satisfied: (1) an unsafe condition exists in the product, and (2) the condition is likely to exist or develop in other products of the same type design. Id. § 39.5. Anyone who operates an aircraft is required to comply with an applicable AD. Id. § 39.7." Robinson, 454 F.3d at 167 n.8.

engine as those at issue in this case. Robinson, 326 F. Supp. 2d at 654. In Hartzell's renewed Motion for Summary Judgment and the related submissions to the Court, the parties present dueling expert testimony regarding these SDRs.

Hartzell presents the affidavit of Richard Moffett, former Vice-President of Engineering for Textron Lycoming, dated November 10, 2006, in which Moffett analyzes the SDRs, as follows:

> There are reports of propeller blade tip fractures on 20 Mooney M20 aircraft that were identified as using the Lycoming IO-360, 200 hp engine. The location of the fractures vary from blade "tip" to 4-10 inches from the tip. One additional report did not give the Mooney aircraft model or identify the engine and indicates a fracture 6.5 inches from the tip. Two fractures occurred in the blade shank area. None of these fractures correspond to the location of the fracture reported in this case which occurred at about 27 inches from the tip of the blade.

Def.'s Mot. Summary J., Ex. K ¶ 7(d). Hartzell also presents an affidavit of Thomas McCreary, Air Safety Investigation Manger for Hartzell, dated April 23, 2007. Def.'s Reply Ex. H ¶ 1. McCreary testifies that "[a]side from one exception, which was caused by physical deformation to the mid-blade area, all of the plaintiff's SDRs are either tip failures or retention shoulder failures." Id. Ex. H ¶ 10.

In response, plaintiffs present a declaration of Donald Sommer, a mechanical engineer and president and owner of Aeroscope, Inc., an engineering firm, dated April 3, 2007. Pls.' Resp., Ex. X ¶ 3; see also Pls.' Reply First Mot. Summary J., Ex. B ¶ 1 (describing qualifications). Sommer states:

> I have reviewed the Service Difficulty Reports that are directly related to the subject accident. I have attached at Exhibit 1 to this declaration all reports that have aircraft with Lycoming 360 series engines equipped with Hartzell propeller blades similar to the one installed on the accident aircraft. The high number of SDRs addressing propeller failures on 360 cubic inch Lycoming engines and Hartzell propellers shows a trend of failures, which provides notice of a defect in the propeller/engine system.

> The root cause of these fractures is high vibrational stresses generated by the engine/propeller combination, independent of blade location regardless of the fracture initiation point.

Pls.' Resp., Ex. X ¶ 3.

### 4. Additional Evidence Regarding Dampers: Engineering Report 159

Plaintiffs also present additional evidence regarding Hartzell's statement in ER 213 that dampers "can wear and cause higher stresses." Specifically, plaintiffs present ER 159, in which Hartzell summarizes "numerous tests" that "relate to the problem of finding satisfactory propellers for the Lycoming 4 cylinder O-360 engine from the standpoint of vibrational stresses." Pls.' Resp., Ex. D. Plaintiffs argue that the Court should consider ER 159 in conjunction with evidence that was before the Court when the first motion for summary judgment was filed, a 1972 letter in which Hartzell suggested installing dampers on an aircraft to reduce stress. Pls.' Resp. at 25 (citing Pls.' Resp. First Mot. Summary J., Ex. N); see also Robinson, 326 F. Supp. 2d at 638.

In reply, Hartzell presents an affidavit of Thomas McCreary dated April 23, 2007. McCreary states in the affidavit that eight of the SDRs presented involved damped engines and that "[t]hese events clearly show that dampened engines are not the end-all solution to addressing propeller problems." Def.'s Reply, Ex. H ¶ 4.

### III. SUMMARY JUDGMENT: STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate where, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "By its very terms, this

standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Courts hold that "a material fact is 'genuine,'. . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. A "material" factual dispute is one which might affect the outcome of the case under governing law. Id. "[A] party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985) (internal citations omitted).

## IV.   DISCUSSION

In its renewed Motion for Summary Judgment, Hartzell argues that additional discovery resolves all of the genuine issues of material fact identified in this Court's July 21, 2004 opinion: (1) Hartzell's alleged misrepresentation regarding peak stresses in ER 213; (2) Hartzell's alleged misrepresentation regarding the need for placards in ER 213; and (3) Hartzell's alleged concealment or withholding regarding the actual cause of propeller failures after certification. In response, plaintiffs argue that the additional discovery does not resolve any of the material issues previously identified, but rather establishes a fourth genuine issue of knowing misrepresentation– Hartzell's statement regarding dampers in ER 213.

The Court addresses each of the alleged instances of "knowing misrepresentation, concealment or withholding" in turn.

### A.   Misrepresentation Regarding Peak Stresses in ER 213

In the first motion for summary judgment, the Court found a "genuine issue of material

fact as to whether Hartzell's statement [in ER 213] that the peak stresses reached 'approximately the allowable value' during the vibration test was a misrepresentation." Robinson, 326 F. Supp. 2d at 650. In the renewed Motion for Summary Judgment, Hartzell argues that the FAA's September 11, 1964 letter establishes that Hartzell did not "knowingly" mislead the FAA in ER 213. The Court disagrees.

In the September 11, 1964 letter, the FAA observed that "Hartzell Engineering Report No. 213 covering the strain survey for the propeller/engine combination on the M20E aircraft shows that tip stresses are quite high in the 2150 to 2300 RPM range. The allowable stress limit is actually exceeded at 2230 RPM." Def.'s Mot. Summary J., Ex. D; Pls.' Resp., Ex. N.

The FAA's statement that "[t]he allowable stress limit is actually exceeded at 2230 RPM" is evidence that Hartzell submitted the graphs in ER 213 to the FAA along with the narrative portion of that report, and that the FAA reviewed the graphs. However, the submission of the graphs does not resolve the jury question whether, in the narrative portion of ER 213, Hartzell knowingly misrepresented the level of vibratory stresses measured. As the Court held in the July 21, 2004 opinion, "[t]he inclusion of the graphs and the summary in the report are relevant to the jury's determination of whether Hartzell made this statement knowingly, but it does not correct the misrepresentation as a matter of law." Robinson, 326 F. Supp. 2d at 650.

Moreover, as the Court held in the July 21, 2004 opinion, whether Hartzell "knowingly" misrepresented the level of vibratory stresses in ER 213 is a jury question. "'The issue of intent is 'particularly inappropriate for resolution by summary judgment' because evaluating state of mind often requires the drawing of inferences from the conduct of parties about which reasonable persons might differ.'" Robinson, 326 F. Supp. 2d at 653 (quoting Justofin v. Metro. Life Ins.

Co., 372 F.3d 517, 524 (3d Cir. 2004)).  The September 11, 1964 letter does not alter that determination.

Thus, there remains a genuine issue of material fact as to Hartzell's statement regarding vibratory stresses in ER 213, and Hartzell is not entitled to a judgment as a matter of law.[7]

**B.     Misrepresentation Regarding Placards in ER 213**

In the first motion for summary judgment, the Court held that the placards "imposed by the FAA raise a genuine issue of material fact as to whether Hartzell's statement concerning operating restriction placards in ER 213 was a misrepresentation."  Robinson, 326 F. Supp. 2d at 651.  In the renewed Motion for Summary Judgment, Hartzell argues that the September 11, 1964 letter and subsequent events demonstrate that Hartzell did not "knowingly misrepresent" to the FAA in ER 213 that placards were unnecessary.  The Court disagrees.

In the September 11, 1964 letter, the FAA stated that "a placard against continued operation within the 2150 to 2300 RPM range would aid in preventing" failures due to excessive vibratory stresses.  Def.'s Mot. Summary J., Ex. D; Pls.' Resp., Ex. N.  On May 28, 1965, after an exchange of correspondence and a meeting with Hartzell and Textron, the FAA adopted "AD 65-12-13 which changed the red arc on the tachometer to limit operation between 2100 and 2350 r.p.m."  Robinson, 326 F. Supp. 2d at 639.

The September 11, 1964 letter and related events demonstrate that between 1964 and 1965 the FAA and Hartzell came to an agreement that an Airworthiness Directive requiring

---

[7] The Court further observes that even if the September 11, 1964 letter suggests that no "misrepresentation" occurred, there is still a genuine issue as to whether Hartzell "concealed" or "withheld" information under the relevant exception to the GARA statute of repose.  See NEPS Resp. at 4-5.

placards was necessary.[8] However, this evidence does not resolve the question whether Hartzell knowing misrepresented that placards were unnecessary in ER 213 in 1963. As the Court previously held, there is evidence of misrepresentation in ER 213 and "[a]ny later efforts Hartzell may have made to correct this misrepresentation by asking the FAA to impose operating limits do not cure the initial misrepresentation as a matter of law." Robinson, 326 F. Supp. 2d at 651.

C. **Misrepresentation, Concealing or Withholding Regarding the Actual Cause of Propeller Failures After Certification**

In the July 21, 2004 opinion, the Court held that "the evidence submitted by plaintiffs is sufficient to raise a genuine issue of material fact with respect to whether Hartzell misrepresented, concealed, or withheld the actual cause of propeller failures" after certification. Robinson, 326 F. Supp. 2d at 655. In the renewed Motion for Summary Judgment, Hartzell argues that additional expert testimony resolves this issue in Hartzell's favor. Again, the Court disagrees.

In the renewed Motion for Summary Judgment, Hartzell presents the affidavits of experts Moffett and McCreary who testified that the SDRs presented are not relevant to this case because none of the fractures described in the SDRs "correspond to the location of the fracture reported in this case." Def.'s Mot. Summary J., Ex. K ¶ 7(d); see also Def.'s Reply, Ex. H ¶ 10. Moffett further testified that only one of the SDRs "that appears to deal with a mid-blade fracture . . . That could not be evidence of a 'trend' of any sort even if it involved the engine at issue here,

---

[8] This was not the first time the FAA considered placards for the propeller at issue. Rather, there is evidence that "[w]hen the propeller was certified, the propeller's Type Certificate Data Sheet included a Note requiring owners of Mooney M20E aircraft to mark their tachometers in red between 2000 and 2350 r.p.m. to indicate a restriction on continuous operation in this engine speed range." Robinson, 326 F. Supp. 2d at 639.

which it does not." Def.'s Mot. Summary J., Ex. K ¶ 7(o).

In response, plaintiffs present the declaration of plaintiffs' expert, Sommer, who stated that the SDRs involving aircraft with engines and propellers similar to those on plaintiffs' aircraft "show[] a trend of failures, which provides notice of a defect in the propeller/engine system. The root cause of these fractures is high vibrational stresses generated by the engine/propeller combination, independent of blade location regardless of the fracture initiation point." Pls.' Resp., Ex. X ¶ 3. Sommer further stated that blade failure "can occur at the shank, mid-blade, or at the tip and in each case, the root cause can be traced back to the vibrational stresses . . . ." Id. ¶ 9.

The testimony of Hartzell's experts, Moffett and McCreary, does not resolve the genuine issue of material fact as to whether Hartzell misrepresented, concealed or withheld information regarding the actual cause of propeller failures after certification. According to plaintiffs' expert, Sommer, the SDRs demonstrate a pattern of propeller failures caused by vibrational stresses "regardless of the fracture initiation point." Thus, there remains a genuine issue of material fact as to whether Hartzell misrepresented, concealed or withheld the actual cause of propeller failures.

**D.    Misrepresentation Regarding Dampers in ER 213**

In the July 21, 2004 opinion, the Court ruled that "[t]here is no evidence that Hartzell's statement about dampers was a misrepresentation. Specifically, plaintiffs have not produced evidence to refute Hartzell's statement that worn dampers can produce higher stresses. Thus, plaintiffs have not raised a genuine issue of material fact with respect to whether this statement was a misrepresentation." Robinson, 326 F. Supp. 2d at 650. That ruling was "without prejudice

to plaintiffs' right to offer evidence at trial that Hartzell's statement about dampers was a misrepresentation." Robinson, 326 F. Supp. 2d at 650 n.8.

In their Response to Hartzell's renewed Motion for Summary Judgment, plaintiffs argue that ER 159 "establishes that Hartzell knew in 1957 that undamped Lycoming 360 cubic inch engines generated vibrations that were damaging to Hartzell propellers." Pls.' Resp. at 2. According to plaintiffs, ER 159 "is evidence of Hartzell's pre-ER 213 knowledge that there is a need for vibration dampeners in order to reduce the resonant conditions in the propeller and crankshaft that were causing excessive vibrations." Id. at 25.

Having reviewed ER 159, the Court concludes that, without more, it does not raise a genuine issue of material fact "that there is a need for vibration dampeners." See Pls.' Resp. at 2. ER 159 does not provide "evidence to refute Hartzell's statement that worn dampers can produce higher stresses." Robinson, 326 F. Supp. 2d at 650. Thus, the Court remains of the opinion that, consistent with the July 21, 2004 Memorandum and Order, there is no genuine issue of material fact that Hartzell's statement that dampers "can wear and cause higher stresses" was a misrepresentation.

## V.     CONCLUSION

For the foregoing reasons, the Court determines that there are genuine issues of material fact as to whether Hartzell "knowingly misrepresented, concealed or withheld" information from the FAA. Thus, Defendant Hartzell Propeller Inc.'s Motion for Summary Judgment Pursuant to the General Aviation Revitalization Act of 1994 is denied.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL ROBINSON and WENDY ROBINSON, <br>                 Plaintiffs, <br><br> v. <br><br> HARTZELL PROPELLER INC., and NEW ENGLAND PROPELLER SERVICE, INC. <br>                 Defendants. | CIVIL ACTION <br> NO.  01-5240 |

**O R D E R**

**AND NOW**, this 3rd day of July, 2007, upon consideration of:

1.	Defendant Hartzell Propeller Inc.'s Motion for Summary Judgment Pursuant to the General Aviation Revitalization Act of 1994 (Document No. 116, filed March 2, 2007); New England Propeller Service, Inc.'s Response to Hartzell Propeller, Inc.'s Motion for Summary Judgment (Document No. 118, filed March 30, 2007); Plaintiffs' Response to Hartzell Propeller Inc.'s [Second] Motion for Summary Judgment Pursuant to the General Aviation Revitalization Act of 1994 (Document No. 119, filed April 3, 2007); Defendant Hartzell Propeller Inc.'s Reply Brief (Document No. 121, filed April 27, 2007); and

2.	Plaintiffs' Motion to Strike Hearsay Exhibit from Summary Judgment Record (Document No. 122, filed May 16, 2007); Defendant Hartzell Propeller Inc.s' Response to Plaintiffs' Motion to Strike Exhibit "F" from Summary Judgment Record (Document No. 127, filed June 11, 2007); and Plaintiffs' Reply in Support of Motion to Strike Hearsay Exhibit from Summary Judgment Record (Document No. 128, filed June 18, 2007),

for the reasons set forth in the attached Memorandum, **IT IS ORDERED**, as follows:

1.	Defendant Hartzell Propeller Inc.'s Motion for Summary Judgment Pursuant to the General Aviation Revitalization Act of 1994 is **DENIED**.

2.	Plaintiffs' Motion to Strike Hearsay Exhibit from Summary Judgment Record is **DENIED AS MOOT**.

        **BY THE COURT:**

        /s/	**JAN E. DUBOIS**, **J.**

        _____

        **JAN E. DUBOIS, J.**